Leanne GRONNEBERG, Plaintiff,

v.

Shirley HOFFART and Shane Hoffart,
Defendants and Appellees,

and

Gary S. Gronneberg, Intervening
Defendant and Appellant.

Civ. No. 900241.

Supreme Court of North Dakota.

March 5, 1991.

Dosland, Dosland, Nordhougen, Lillehaug & Johnson, PA, Moorhead, for defendants and appellees; argued by Duane A. Lillehaug.

Gary S. Gronneberg, Fargo, pro se.

MESCHKE, Justice.

Gary S. Gronneberg appealed from a judgment on a jury verdict which apportioned fault for an auto accident. Because the trial court failed to instruct the jury on signaling a stop and on a sudden emergency, we reverse and remand for new trial.

During an afternoon "rush hour" in June 1989, Gary Gronneberg was driving southbound on South University Drive in Fargo. Gronneberg's auto, owned by his wife Leanne, was following a 1972 auto driven by Shane Hoffart. When a chain reaction of sudden stops occurred, Gronneberg collided with the rear of Hoffart's auto.

Leanne Gronneberg sued both Shane, the driver, and Shane's mother, Shirley Hoffart, a joint owner of the Hoffart auto. Gary Gronneberg intervened as a defendant. The parties stipulated damages, including repair expenses of $3,531.13, loss of use of $120.00, and interest. Only the question of fault was decided by the jury.

At trial, Gary testified that Shane's brake lights did not signal before the accident. He claimed that this created a "sudden emergency" because he didn't have adequate warning of the stop. Shane claimed that Gary was following too closely and without proper lookout before Shane's stop.

The special verdict apportioned 2% fault to Shirley Hoffart, 15% to Shane Hoffart, and 83% to Gary Gronneberg. The trial court added Shirley Hoffart's fault to Shane's, and ordered judgment against Shane for 17% and against Gary for 83% of the damages and costs. After Gary's motion for a new trial or judgment notwithstanding the verdict was denied, Gary appealed, claiming that the trial court erred in excluding evidence, in refusing to instruct the jury on signalling a stop, and in refusing to instruct the jury on a sudden emergency.

## EVIDENTIARY RULINGS

■ Gary argues that the trial court erred in failing to take judicial notice of reaction times, braking distances, and stopping distances. Ten of Gary's exhibits on those subjects were denied admission as evidence by the trial court. Some of these exhibits are photocopies and others are handiwork diagrams, but none of them identify their sources. Gary offered these exhibits through the investigating police officer, who testified that they were similar to charts available to her through her work, but who could not verify the information that they contained.

■ Judicial notice is governed by NDREv 201.[1] The Explanatory Note to the rule says:

Subdivision (b) provides that the kinds of adjudicative facts which may be judicially noticed must be either (1) generally known or (2) capable of accurate and ready determination.... If the function of judicial notice is to remove from the stricture of formal proof facts that are

1. NDREv 201 says:
   (a) *Scope of Rule.* This rule governs only judicial notice of adjudicative facts.
   (b) *Kinds of Facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
   (c) *When Discretionary.* A court may take judicial notice, whether requested or not.
   (d) *When Mandatory.* A court shall take judicial notice if requested by a party and supplied with the necessary information.
   (e) *Opportunity to Be Heard.* A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
   (f) *Time of Taking Notice.* Judicial notice may be taken at any stage of the proceeding.
   (g) *Instructing Jury.* The court shall instruct the jury to accept as conclusive any fact judicially noticed.

clearly beyond dispute, then either basis for the exercise of judicial notice is valid.

A fact that is reasonably disputed or found in a questionable source does not qualify for judicial notice.

NDREv 201(g) directs the trial court to "instruct the jury to accept as conclusive any fact judicially noticed." Without adequate evidence of accuracy, the trial court refused to judicially notice the excluded exhibits. We see no abuse of the trial court's discretion in doing so.

■ The investigating police officer testified that neither of Shane's brake lights worked after the accident. Gary testified that Shane had admitted, immediately after the accident, that he thought at least one of his brake lights wasn't working before the accident, although Shane denied any such admission. Gary offered evidence of subsequent repairs to Shane's brake lights in September 1989, claiming that these repairs evidenced that neither of the brake lights worked before the accident. The trial court excluded this evidence.

Gary based his offer of subsequent repair evidence on the exceptions to NDREv 407:

> Whenever, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures if offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Gary inventories other possible purposes for this evidence:

1) To prove the condition of the vehicle before the collision;
2) To impeach the testimony of Shane and Shirley Hoffart;
3) To prove control of repairs by Shirley Hoffart as the owner;
4) To prove feasibility of repairs by the owner;

5) To prove a course of conduct by both Shane and Shirley Hoffart ignoring repairs to safety equipment on the vehicle;
6) To prove knowledge of both Shane and Shirley Hoffart about the poor working condition of the brake lights before the collision; and
7) To prove Shirley Hoffart's duty to repair the brake lights.

The trial court thought that the only acceptable purpose might be impeachment. The trial court ruled that this possibility was too tenuous and that the danger of prejudice under NDREv 403 outweighed any probative value of the evidence.

The subsequent repairs that Gary sought to show were performed three months after the collision. Gary's offer of proof disclosed that, when repaired in September, Shane's brake lights did not work at all because of a broken wire in the steering column. Gary theorized that the broken wire meant that both brake lights could not have been functioning at the time of the accident.

This court has discussed admitting evidence of conditions after a considerable time interval.

> In the absence of a showing that the essential conditions were the same an issue as to the existence of a particular condition cannot be proved by evidence of the condition concerning that issue existing at a considerably later time.
>
> \* \* \* \* \* \*
>
> [E]vidence of condition of things a considerable time after the event is not admissible to show condition at time of event.... [C]onditions not inherently lasting or not likely to continue the same after much lapse of time are not admissible without evidence that they have remained unchanged.

*Kemmer v. Sunshine Mutual Insurance Co.*, 79 N.D. 518, 57 N.W.2d 856, 859 (1953) (citations omitted). Although these repairs may have had another acceptable probative purpose, a three month interval leaves plenty of time for any part on a 17-year-old car to need additional repairs. We re-

view a trial court's decision to admit or to exclude evidence under an abuse-of-discretion standard. *Butz v. Werner*, 438 N.W.2d 509, 518 (N.D.1989). We conclude that the trial court did not abuse its discretion in excluding evidence of repairs made three months after the accident.

## JURY INSTRUCTIONS

■ Gary argues that the trial court erroneously refused his requested instruction on the duty of a driver to appropriately signal a sudden stop or decrease in speed. NDCC 39-10-38(3) directs:

No person may stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

*See also* NDCC 39-21-06(1) and 39-21-19(1).[2] In sum, these statutes require stop lights on the rear of each vehicle to be brake-activated, to be in working order, and to be used.

Gary claims that Shane violated this duty. Shane disputes this, claiming that Gary was following too closely. This court has stated that "such a determination [is] factual and that it should [be] left to the jury to make." *Koland v. Johnson*, 163 N.W.2d 330, 337 (N.D.1968). In this case, the jury did not have the full question before it because the trial court failed to instruct on the duty to signal a sudden stop.

2. The pertinent part of NDCC 39-21-06(1) says:
No person may ... operate on the highways any motor vehicle registered in this state and manufacture or assembled after January 1, 1964, unless it is equipped with at least two stop lamps meeting the requirements of section 39-21-19....
The pertinent part of NDCC 39-21-19(1) says:
Any motor vehicle ... when required under this chapter must be equipped with a stop lamp or lamps on the rear of the vehicle which shall display a red light visible from a distance of not less than three hundred feet ... to the rear in normal sunlight, and which shall be actuated upon application of the service (foot) brake....

3. The requested instruction recites NDJI–Civil 215 (1986):
SUDDEN EMERGENCY. If a person is suddenly and unexpectedly confronted with an

■ The trial court gave an instruction on brake lights which encompassed NDCC 39-21-06(1) and 39-21-19(1). Although the trial court instructed that ordinary care was required in operating a motor vehicle, it did not instruct on the duty to signal before a stop, as requested. While the violation of a statutory duty is not negligence per se, it is evidence of negligence. *State ex rel. Industrial Commission v. Harlan*, 413 N.W.2d 355, 358 (N.D.1987). The instruction on the duty to signal before a stop was properly requested here.

■ Gary contends that a "sudden emergency" arose when Shane braked unexpectedly to avoid hitting the pickup that he was following, but gave no warning of his sudden stop. For this reason, Gary argues that the trial court erroneously refused his requested jury instruction on sudden emergency.[3]

Application of the sudden-emergency doctrine is well-settled.

A person invoking the emergency doctrine is not exonerated merely because of an emergency. The doctrine is simply a principle of law to be utilized in determining the issue of negligence where the actor is suddenly confronted with an emergency not of his own making or fault. Under such circumstances he is required only to exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances. Accordingly, conduct, which

emergency or situation of peril that involves impending danger, or the appearance thereof, to himself or to others and is not created by his own fault, he is not expected, nor required, to use the same judgment and prudence that is required of him in calmer and more deliberate moments. His duty is to exercise only the care that a person of ordinary prudence would exercise in the same situation. If, at that moment, he does what appears to him to be the best thing to do, and his choice and manner of action are the same as might have been followed by a person of ordinary prudence under the same conditions, he does all the law requires of him, although, in the light of after-events, it appears that a different course would have been better and safer.

under other circumstances would constitute negligence, may not amount to negligence even though he erred in his judgment in trying to extricate himself from a position of peril.

*Farmers Union Grain Terminal Ass'n v. Briese*, 192 N.W.2d 170, 179 (N.D.1971) (citing *Bauer v. Kruger*, 114 N.W.2d 553 (N.D.1962), and *Gravseth v. Farmers Union Oil Co. of Minot*, 108 N.W.2d 785 (N.D.1961)). The sudden-emergency instruction was properly requested here.

Shane argues, however, that Gary caused the emergency himself by failing to pay close attention to Shane's vehicle in front of him and that the jury so decided. Therefore, Shane argues, the sudden-emergency doctrine does not apply here.

Two such different views of the evidence create an issue of fact. In a jury trial, it is the jury, not the court, that is the finder of fact and should determine which view of the evidence to accept. *See Waletzko v. Herdegen*, 226 N.W.2d 648 (N.D.1975). "The instructions should fairly cover the claims made by both sides of the case." *Wasem v. Laskowski*, 274 N.W.2d 219, 226 (N.D.1979). Shane's view of Gary's possible negligence does not justify the refusal of the trial court to instruct on Gary's different view of the evidence.

■ We review claims of error in jury instructions with respect for the form, style, and language of the trial court's formulation. *Matter of Estate of Flaherty*, 446 N.W.2d 760, 763 (N.D.1989). Still, jury instructions should fairly inform the jury of the law applicable to the case. *Id.* Although it is true, as Shane asserts, that the jury in this case determined that Gary was primarily negligent, the instructions failed to fairly inform the jury of necessary law to make that determination. The trial court's failure to properly instruct on the duty to signal before a stop and on a sudden emergency left the jury unaware that it could find Gary either less negligent, or not negligent at all, if it accepted his view of the facts.

Therefore, we reverse and remand for a new trial with proper instructions to the jury.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.